# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT HOWARD OLSHANE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-05727-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

On May 30, 2014, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since October 29, 2012. Plaintiff's applications were denied initially and on reconsideration. (Administrative Record

["AR"] 64-106.) A hearing took place on September 27, 2016 before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (AR 37-55.)

In a decision dated November 2, 2016, the ALJ found that Plaintiff suffered from the severe impairments of gouty arthritis and hypertension. (AR 25.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions: (1) no climbing ladders, working at unprotected heights, or operating hazardous machinery; and (2) occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 25.) Given the foregoing RFC, the ALJ found that Plaintiff was capable of performing his past relevant work as a customer service clerk. (AR 29.) Thus, the ALJ concluded that Plaintiff was not disabled at any time from October 29, 2012 to the date of the decision. (AR 29.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

1. Whether the ALJ's RFC assessment is free from legal error and supported by substantial evidence.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

Plaintiff claims disability due to foot and knee impairments and associated pain. In assessing Plaintiff's RFC, the ALJ began by discussing Plaintiff's testimony that his pain was an 8 on a scale of 0 to 10, but that medication reduced his pain a 3. (AR 27, 49.) The ALJ noted that although Plaintiff said he had been fired from his job "because the medication makes him sleepy, slur his words, and lose concentration," Plaintiff had been arrested for DUI and was incarcerated from February 2013 through October 2013. (AR 27; *see* AR 40, 43, 430.) According to the ALJ, the record demonstrated that Plaintiff did not stop working due symptoms caused by his severe impairments, but because he was fired. (AR 28.)

With respect to the medical evidence, the ALJ noted that there was radiographic evidence of gouty arthritis, but that Plaintiff's treatment notes showed that he had been successfully treated for gout for a number of years and his condition was controlled with medication. (AR 28, 317-322.) Specifically, the ALJ pointed out that in November 2013, Plaintiff's treating physician indicated that Plaintiff's symptoms were significantly alleviated with indomethacin. (AR 28, 335.) In March 2014, Plaintiff reported no pain. (AR 360-361, 439.) In March 2015, Plaintiff reported his pain was a 3 in the scale of 0 to 10 with medication. (AR 486.) In October 2015, Plaintiff's pain remained at a 3. He reported managing well and better use of his legs. (AR 451-453, 563.) March 2016 treatment notes reflected that Plaintiff's gout attacks were prevented by allopurinol. (AR 547.)

The ALJ noted that the absence of any evidence that Plaintiff saw specialists such as rheumatologists, orthopedic surgeons, or physical therapists, as would be expected if his symptoms were not under control. Specifically, the ALJ pointed out that in January 2015, knee replacements were suggested if Plaintiff failed conservative management. (AR 28, 474.) Plaintiff, however, did not follow up with this recommendation. The ALJ found that Plaintiff's failure to pursue knee replacement indicated that medication was effective in controlling his symptoms. In addition, the ALJ noted that Plaintiff was referred to a rheumatologist (AR 445-447), but the record indicated that he had never seen one. (AR 29.)

The ALJ further stated that Plaintiff's treating physicians had recommended that Plaintiff wean off pain medications, but Plaintiff continued to receive pain medication from LAGS Spine and Sportscare ("LAGS"). Plaintiff reported that his pain was improved by the medication and that he had no side effects. (AR 333, 380, 386, 388.)

With regard to the opinion evidence, the ALJ credited the opinions of the State agency consultants, finding them supported by the medical signs and laboratory findings, consistent with the record, and credible given the consultants' area of specialization. (AR 28, 98-107, 123-133.)

On the other hand, the ALJ gave little or no weight to the opinions of treating physician Matthew Root, D.O. and physician's assistant Beth Brown, both of whom completed Medical Source Statements regarding Plaintiff's functional limitations. (AR 28-29.) Plaintiff challenges the ALJ's rejection of these two opinions.

**A.  Dr. Root**

Dr. Root began treating Plaintiff in March 2014,[1] and after that date, Plaintiff had monthly appointments. (*See* AR 380, 383, 388, 393, 398, 411.) In his treatment

---

[1] Although Dr. Root stated in his Medical Source Statement that he began treating Plaintiff in February 2014, the record indicates that Plaintiff first appeared for new patient consultation on March 4, 2014. (AR 411, 531.)

4

notes, Dr. Root indicated that Plaintiff's medication relieved his pain by more than 50%, the medication helped for more than twelve hours, and Plaintiff suffered no side effects from the medication. (AR 381, 383, 388, 393, 398.)

In October 2014, Dr. Root completed a Medical Source Statement indicating that he had monthly contact with Plaintiff from February 2014. Dr. Root diagnosed Plaintiff with "joint damage – chronic pain from gout" and stated that his diagnosis was based upon Plaintiff's X-rays. According to Dr. Root, Plaintiff's prognosis was "pain management." (AR 422.) In Dr. Root's opinion, Plaintiff could sit, stand, and walk zero to two hours in an eight-hour work day; could never lift and carry more than twenty pounds and occasionally carry ten pounds; could never twist, stoop, crouch, climb ladders or stairs; had significant limitations reaching, handling or fingering; suffered from constant pain that would interfere with his concentration; was incapable of even "low stress" jobs; and would miss more than four days per month due to his impairments. (AR 423-424.)

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If a treating physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).

1          Because Dr. Root's opinion was contradicted by the opinions of two non-examining State agency physicians who assigned a less restrictive RFC, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting it. *Orn*, 495 F.3d at 632.

In assigning little weight to Dr. Root's opinion, the ALJ stated that "the limitations are overly restrictive in light of the minimal symptoms in the record." (AR 28.) If provided with a specific supporting discussion, this might constitute a valid reason for discounting the opinion of a treating physician. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physician's opinion that is unsupported by the record as a whole or by objective medical findings). Here, however, in assessing the treating physician's opinion, the ALJ failed to identify any specific inconsistencies between Dr. Root's opinion and the medical record. Merely invoking the boilerplate language that Dr. Root's opinion lacked support in the record or was inconsistent with undefined portions of the record reflecting minimal symptoms does not amount to a specific and legitimate reason for rejecting the opinion. *See Garrison*, 759 F.3d at 1012-1013 ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. . . ."); *Carmona v. Berryhill*, 2017 WL 3614425, at *4 (C.D. Cal. Aug. 22, 2017) ("Saying that a medical opinion is 'inconsistent with the substantial evidence' is not a specific reason for rejecting the opinion; it is nothing more than boilerplate."); *Stimson v. Colvin*, 194 F. Supp. 3d 986, 1002 (N.D. Cal. 2016) (same).

The ALJ provided one other reason for rejecting Dr. Root's opinion. That is, she found the opinion to be of "questionable validity" because Dr. Root imposed limitations that did not appear to correlate with any of Plaintiff's symptoms. As a single example, the ALJ noted that Dr. Root opined that Plaintiff could never twist or stoop but that the record lacked any evidence that Plaintiff had problems with these activities. (AR 28-29, 422-424, 661-663.)

Plaintiff contends that the ALJ failed to acknowledge evidence in the record that would have confirmed that he was unable to twist or stoop. As Plaintiff points out, the State agency physicians opined that Plaintiff was limited to occasional stooping/bending at the waist, thereby corroborating some restriction on stooping. (AR 119, 130.) Plaintiff also points out that in his disability report, he alleged that he was unable to twist. (AR 282.) The ALJ did not provide any other example supporting her conclusion that Dr. Root's opinion did not "correlate" with Plaintiff's symptoms. In light of the overall record and the ALJ's brief discussion of Dr. Root's opinion, this one example − with other conflicting evidence in the record − does not constitute a legitimate reason supported by substantial evidence to reject that opinion.

Moreover, the ALJ erred because she failed to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford Dr. Root's opinion. *See Trevizo,* 871 F.3d at 676. While the ALJ may not necessarily be required to provide a detailed written analysis of each factor, there must be some indication that the ALJ considered the relevant factors. *See Torres v. Berryhill*, 2018 WL 1245106, at *5-*6 (S.D. Cal. Mar. 9, 2018) (*Trevizo* does not require a written analysis of the regulatory factors, but rather an indication that the ALJ considered them); *Zeitler v. Berryhill*, 2017 WL 6017853, at *3 (N.D. Cal. Dec. 5, 2017) (rejecting argument that "specific findings on each factor were required in every case in light of *Trevizo*"); *Standen v. Berryhill*, 2017 WL 4237867, at *8 (E.D. Cal. Sept. 25, 2017) ("The court concludes that it should not read into *Trevizo* a requirement that ALJs explicitly recite an analysis of each § 404.1527(c) factor in

each of their decisions. Rather, *Trevizo* requires that the record reflect that the ALJ actually considered and applied the appropriate factors."). Here, there is no indication that the ALJ considered the relevant factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, or the specialization of the physician. *See* 20 C.F.R. § 404.1527(c)(2)-(6). In light of the ALJ's failure to cite the relevant regulations or discuss the topics addressed in the factors, it is not clear that the ALJ recognized that Dr. Root was a treating physician. As in *Trevizo*, this failure to consider the appropriate factors also amounts to error.

An ALJ's failure to properly evaluate a treating physician's opinion may be harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). The Court cannot conclude as much here. Rather, if Dr. Root's opinion were credited, it would certainly affect an ALJ's assessment of Plaintiff's RFC and may likely have affected the ultimate determination of disability. *See Matthews v. Berryhill*, 2018 WL 1352927, at *4 (C.D. Cal. Mar. 15, 2018) (failure to properly consider the treating physician's opinion was not harmless because a reasonable ALJ crediting the treating physician's opinion could have reached a different disability determination).

**B. Physician's Assistant Brown**

Because reversal is warranted based on the ALJ's failure to properly evaluate the treating physician's opinion, the Court need not resolve Plaintiff's remaining contention that the ALJ erred in rejecting the opinion of P.A. Brown. Nevertheless, the Court notes that P.A. Brown is an "other medical sources" as opposed to "acceptable medical sources," and therefore, the ALJ was only required to provide germane reasons before rejecting her opinion. *See Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The

ALJ's explanation that P.A. Brown's opinion was inconsistent with the medical evidence and, in particular, the evidence showing that Plaintiff's symptoms were well-controlled by medication (AR 28-29) likely satisfied that obligation.

**REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[2]

///

---

[2] It is not the Court's intent to limit the scope of the remand.

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 5/18/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE